UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-mj-45 (KMM/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S RESPONSE** |
| v. | ) | **TO DEFENDANT'S MOTION** |
| | ) | **TO STRIKE APPEARANCE OF** |
| JOSE ROBERTO RAMIREZ, | ) | **GOVERNMENT'S COUNSEL** |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, William L. Richards, Special Assistant United States Attorney, hereby submits the Governments response to Defendant's Motion to Strike Appearance of Government's Counsel. Because the SAUSAs are detailed on a full-time basis to perform their functions in an entirely civilian capacity and are supervised in their work related to their detail by civilian supervisors, and Congress has unambiguously authorized the appointment of judge advocate attorneys as civilian criminal attorneys, the Defendant's arguments fail.

## LEGAL STANDARD

Courts interpret statutory language "according to its 'ordinary, contemporary, common meaning.'" *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1788 (2022) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979).

Where this ordinary meaning is unambiguous, "the judicial inquiry is complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2020). The Supreme Court "has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end." *Bostock v. Clayton Cty*, 140 S. Ct. 1731, 1749 (2020). "The Court may not 'replace the actual text with speculation as to Congress' intent.' Rather, the Court 'will presume more modestly that 'the legislature says what it means and means what it says.''" *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496-97 (2022) (citations omitted).

The Eighth Circuit has, of course, abided by this oft-repeated axiom. "[W]hen the terms of a statute are unambiguous, judicial inquiry is complete." *United States v. Vig,* 167 F.3d 443, 448 (8th Cir. 1999).  When "statutes are straightforward and clear, legislative history and policy arguments are at best interesting, at worst distracting and misleading, and in neither case authoritative." *Northern States Power Co. v. United States*, 73 F.3d 764, 766 (8th Cir. 1996).

When reviewing multiple statutes, "the Court will 'regard each as effective'—unless Congress' intention to repeal is 'clear and manifest,' or the two laws are 'irreconcilable.' *Main Cmty. Health Options v. United States,* 140 S.Ct. 1308, 1323 (2020) (citing *Morton v. Mancari*, 417, U.S. 535, 550-51 (1974). Likewise, when reviewing "two Acts of Congress allegedly touching on

the same topic, [the] Court is not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.'" *Morton v. Mancari*, 417 U.S. 535, 551 (1974). A party who argues that two statutes cannot be harmonized bears the heavy burden of showing "a clearly expressed congressional intention" that one statute clearly repeals another. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995).

## ARGUMENT

I.    **CONGRESS HAS EXPRESSLY AUTHORIZED JAG ATTORNEYS TO SERVE AS SPECIAL ASSISTANT UNITED STATES ATTORNEYS**

**a. The statutes in question should be interpreted in concert.**

There are three statutes at play here. First, the PCA, which prohibits anyone from "willfully us[ing] any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws," "except in cases and under circumstances expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385.

To determine whether the PCA applies, a court should not look at simple membership in "the Army, the Navy, the Marine Corps, the Air Force, or the Space Force" but instead focus on the *use* of a part of one of those services "as a posse comitatus or otherwise to execute the laws." 18 U.S.C. §

1385. Second, an Act of Congress expressly authorizes the Attorney General to appoint SAUSAs. 28 U.S.C. 543. Third, an Act of Congress expressly authorizes the detail of judge advocates to represent the United States in criminal matters. 10 U.S.C. § 806(d)(1).

Defendant's argument requires the Court to read these three statutes as contradicting one another, contrary to Supreme Court precedent and multiple Department of Justice Office of Legal Counsel memoranda. *Morton v. Mancari*, 417 U.S. 535, 551 (1974) (holding that where "two Acts of Congress allegedly touch[] on the same topic, [the] Court is not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.'").

As an initial matter, the PCA does not apply here. The military lawyers at issue have been detailed to a civil office, fully under the supervision of civil superiors, rendering the PCA inapplicable. Army membership does not by itself trigger the PCA. Instead, to violate the PCA, one must "willfully use[ ] any part of the Army . . . to execute the laws . . ." 18 U.S.C. § 1385. Therefore, the key determination is whether the detailed SAUSAs are being *used* in a military capacity to execute the laws, rather than simply focusing on the SAUSAs affiliation with a Service. The answer here is clearly no. The SAUSAs have been appointed into a civil office and are fully and appropriately supervised by civilian superiors. The only connection to the

military is their membership, which is not part of their enforcement of civilian law. However, even if this Court were inclined to determine that the PCA did apply, Congress has expressly authorized such details, which therefore also qualifies their details as an exception to the PCA.

The PCA's unambiguous language allows Congress to enact exceptions. Acts of Congress have created exceptions that allow judge advocates to be appointed as SAUSAs and to represent the civilian government in criminal matters. These are not contradictions. They are precisely the sort of congressional exceptions anticipated by the language of the PCA. Defendant has failed to show "a clearly expressed congressional intention" that the PCA supersedes or repeals any of the others. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995). The Court should rather read these statutes as part of a consistent statutory scheme, as Congress intended.

**b. The statutes in question are unambiguous and should be interpreted according to their plain meaning alone.**

The parties agree that the 18 U.S.C. § 1385, the Posse Comitatus Act ("PCA") allows the detailing of members of a branch of the military where "expressly authorized" by an "Act of Congress." (Defendant's Reply, Doc. No. 43, p. 3). Defense's reply brief contends that no statute expressly authorizes the detailing of Judge Advocate General Corps ("JAGC") attorneys as Special

Assistant United States Attorneys ("SAUSAs"). (Doc. No. 43). Not so. An Act of Congress expressly authorizes the Attorney General to appoint SAUSAs. 28 U.S.C. § 543. This statute contains no exceptions or limitations on the attorneys that may be appointed. *See, generally,* 28 U.S.C. § 543. Likewise, 10 U.S.C. § 973(b)(2)(B) unambiguously states that an officer of the armed forces "may hold or exercise the functions of a civil office in the Government of the United States…when assigned or detailed to that office or to perform those functions."

Another Act of Congress further specifies that "A judge advocate who is assigned or detailed to perform the functions of a civil office in the Government of the United States under Section 973(b)(2)(B) of this title may perform such duties as may be requested by the agency concerned, including representation of the United States in civil and criminal cases." 10 U.S.C. § 806(d)(1). This language is express and unambiguous. Defense counsel contends in vain that the language is not an express authorization of the use of judge advocates in the prosecution of civilian criminal matters. This despite the plain language that judge advocates may be detailed to "represent the United States in civil and criminal cases." Defense fails to provide any authority or argument as to why the Court should not take those words at their plain meaning. The government respectfully request that the Court read these words according to their "ordinary, contemporary, common meaning," and deny Defendant's

motion.

Defense invites the Court to do what the Supreme Court and the 8th Circuit have repeatedly admonished Courts not to do: to delve into the legislative history of the statute and review the intent behind the language as outlined by Amici. (Defendant's Reply, p. 4). While the analysis proposed by defense is exemplary and undoubtedly interesting, it is not appropriate given the text's lack of ambiguity. In fact, it is precisely the kind of extraneous inquiry that the Eighth Circuit found potentially "distracting and misleading." *Northern States Power Co. v. United States*, 73 F.3d 764, 766 (8th Cir. 1996). The Government asks the Court not to ignore the Supreme Court; rather, because the text of the statutes in question is unambiguous, let the inquiry end there. The Government respectfully requests that the Court refuse defense's invitation to unnecessary and improper analysis of legislative history and instead rely on the plain language of 10 U.S.C. § 806(d)(1) as an express exception to the PCA.

The Court would not be alone in doing so. While the Eighth Circuit has never considered the question of whether judge advocates may be appointed as SAUSAs on a criminal matter, the Fifth Circuit has. *United States v. Allred*, 867 F.2d 856, 870-71 (5th Cir. 1989). While this Fifth Circuit case is not binding on the Court, as the only appellate review of the question at hand, it is certainly instructive.

In *Allred*, the Court held that the unambiguous language of 28 U.S.C. § 543 and 10 U.S.C. § 806(d)(1), taken in concert, create an express authorization for the appointment of JAG attorneys as SAUSAs. *Id.* at 871. Specifically, "[c]onsidering the Posse Comitatus Act's own indication that it should be interpreted in light of the co-existing statutory framework, it seems clear that [the JAG SAUSA's] participation in no way violates the Act's provisions." *Id.*

### c. Defense's reliance on *Bisonette* is misplaced.

Notably, the *Allred* Court reviewed the opinion in *Bisonette v. Haig*, which Defendant offers as a polestar. *Bisonette*, however, had nothing to do with the use of JAG attorneys as SAUSAs, so it is unhelpful. *Bisonette v. Haig,* 776 F.2d 1384 (reviewing whether the use of armed military personnel to seize and confine an "occupation" on the Pine Ridge Reservation violated the PCA). The *Allred* Court, however, found it was "not…necessary for this Court to determine whether the rule set out in *Bissonette* or some other form of guideline should be applicable" to this circumstance. *Id.* Rather, the defendants' reliance on *Bisonette* "failed to recognize" the exception to the PCA created by 28 U.S.C. § 543 and 10 U.S.C. § 806(d)(1). *Id.*

Defendant's reliance on *Bisonette* fails for the same reason. Defendant argues that the Circuit Court in *Allred* "simply gets the analysis of these

statutes wrong." (Def. Reply, p. 6). He criticizes that Court for not improperly engaging in the legislative history, as he is asking this Court to do, against Supreme Court instruction. The Government, for its part, does not believe the Fifth Circuit Court of Appeals analyzed the plain text of simple statutes incorrectly. Defendant's insistence that JAG attorneys can only participate in criminal matters bearing a military nexus is found nowhere in the statutes in question or in any caselaw. The Government asks the Court not to invent a principle that does not exist or read language into the law that is not there.

## II.   THE USE OF JAG ATTORNEYS AS SAUSAS IS AN ESTABLISHED PRACTICE

To the extent defense or the Court have any concerns that Judge Advocate General participation in this matter is a unique or particularly unprecedented action, perhaps the historical record can allay them.

In 1971, the Office of Legal Counsel examined whether the PCA prohibited the deputization of military personnel to provide security on civilian aircraft, admittedly a different scenario than the one before this Court. Then-Assistant Attorney General William H. Rehnquist determined that "individual members of the Armed Forces assigned to and subject to the exclusive orders of the Secretary of Transportation are not 'any part of the Army or Air Force' within the meaning of the Posse Comitatus Act.," therefore the use of military

personnel, provided they are subject to exclusively civilian supervision, does not violate the PCA. (Sept. 30, 1971).

Similarly, under the Clinton Administration, a group of defendants sought to remove Naval JAG Officer Sundel, acting as a SAUSA, from their case, but the district court and denied the motion and the Ninth Circuit upheld without analysis. *United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000). In its brief to the Ninth Circuit, filed in June of 1999, the government noted "Indeed, active-duty JAG officers like Sundel are *routinely used* as Special Assistant U.S. Attorneys by U.S. Attorneys offices throughout the nation." *Id.* (Brief of Appellee, 1999 WL 33611861 at *46-7 (June 1, 1999)) (emphasis added).

Given that Clinton-era DOJ attorneys noted the routine use of judge advocates as SAUSAs 27 years ago, and the OLC opined that the use of military personnel under civilian supervision was legitimate as far back as the 1970s, the Government respectfully submits that Judge Advocate General's appointment as a SAUSA is not an unprecedented erosion of democratic principles, but a continuation of a routine practice that predates this century.

OLC has recently stated that judge advocates currently detailed to the Department of Justice ("DOJ") will not perform any functions of their military position of record; they will operate on a full-time basis within DOJ; and will work exclusively under the supervision of civilian DOJ employees. *See,*

*generally*, October 23, 2025 Memorandum, 2025 WL 3251684. To the extent defense or Amici have concerns about my supervision or chain of command, they are unfounded. While detailed as a SAUSA to the United States Attorney's Office, Judge Advocate General's work is supervised and directed exclusively by the civilian members of that office. He performs the same functions, in the same manner, under the same chain of command as any other attorney who works at the U.S. Attorney's Office, indeed in the same manner as the countless SAUSAs from other agencies who have come and gone from it. Thus "it is unclear in what way he differs from any other zealous prosecutor." *United States v. Dondich*, 460 F. Supp. 849, 853 (N.D.Cal 1978).

## CONCLUSION

Because the appointment of JAG attorneys is expressly excepted from the PCA by unambiguous statute, the United States respectfully requests that the Court deny Mr. Ramirez's Motion to Strike Appearance of Government's Counsel.

Dated: April 10, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/William L. Richards*
BY: William L. Richards
Attorney ID No.: 5445002NY