UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 26-mj-45 (KMM/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S RESPONSE** |
| v. | ) | **TO DEFENDANT'S** |
| | ) | **SUPPRESSION MOTION** |
| JOSE ROBERTO RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and William L. Richards, Special Assistant United States Attorney, submits this response to Defendant's suppression motion. The United States opposes the motion because the investigatory stop was supported by reasonable suspicion, which ripened into probable cause, and Defendant's subsequent conduct independently established probable cause for arrest, under 18 U.S.C. § 111. The United States further respectfully requests leave to file supplemental briefing if necessary.

**CASE BACKGROUND**

During the upcoming motions hearing, the Government expects to demonstrate the following facts through testimony and evidence. On January 8, 2026, ICE Enforcement and Removal Operations (ERO) officers ("officer" or

1

"officers") participating in "Operation Metro Surge" were conducting a targeted enforcement operation in the Robbinsdale, Minnesota, to locate target Charly Pallo Moreno, (A#245022493), an Ecuadorian national with a final order of removal and a criminal history including aggravated assault and driving under the influence. While surveilling the target's residence, officers observed a car occupied by individuals matching Moreno's description. Upon noticing law enforcement, the occupants fled on foot, with one entering the target's residence and the other fleeing to a nearby McDonald's. Shortly thereafter, the officers resumed surveillance and saw a white BMW in front of the target residence, driven by an individual appearing to match the description of Moreno.

The BMW departed the residence at a high rate of speed. The officers followed the BMW to initiate a stop. Despite activation of emergency lights and sirens, Defendant JOSE ROBERTO RAMIREZ failed to yield and instead drove in a dangerous and evasive manner, including running multiple red lights. Defendant ultimately pulled into the parking lot of a commercial shopping center.

Officers issued clear verbal commands, which Defendant repeatedly ignored. Defendant exited the BMW and entered the passenger seat of another car that arrived at the scene. Officers approached the car and

recovered video footage clearly depicts the officers as federal law enforcement. During this encounter, Defendant remained non-compliant.

Officers attempted to verify Defendant's identification using a mobile facial recognition tool, but Defendant turned away and refused to comply. Defendant continued to obstruct and moved his phone near an officer's face, prompting the officer to deflect it for safety. Defendant then punched the officer in the face, causing injury. The officer later sought medical treatment at a local area hospital.

Video evidence further shows that officers repeatedly requested Defendant's identification, and the driver of the second car Defendant entered the parking lot, (identified as Defendant's aunt), urged him multiple times to comply. Defendant nevertheless refused. Immediately after striking the officer, Defendant's aunt reacted audibly, stating, "why did you hit him?" Officers attempted to remove Defendant from the car and again refused such commands. Defendant was removed from the car and arrested.

Following his arrest, Defendant was advised of his *Miranda* rights.[1]

---

[1] Defendant makes no specific factual allegations regarding the officers' identification of Defendant, but instead broadly asserts there was no probable cause and, on that basis alone, seeks suppression of identification evidence. Defendant does not allege that officers' efforts to confirm his identity were unlawful, unduly suggestive unreliable, or constitutionally deficient. Accordingly, because no disputed issue of material fact has been identified, no evidentiary hearing on the constitutionally of the identification should be ordered.

Defendant, and knowingly and voluntarily waived those rights in writing, During a recorded interview, During a recorded interview, Defendant admitted prior arrests, probation status, awareness of law enforcement presence, intentional refusal to stop, entry into a relative's vehicle, knowledge that officers were federal law enforcement, and that he struck the officer

## ARGUMENT

Federal immigration enforcement is a core sovereign function. Under the totality of the circumstances, officers had reasonable suspicion to initiate the stop, which escalated into probable cause based on Defendant's evasive and dangerous conduct. Any remaining doubt was independently eliminated when Defendant physically assaulted a federal officer and resisted arrest.

## A. THE INVESTIGATORY STOP WAS SUPPORTED BY REASONABLE SUSPICION THAT RIPENED INTO PROBABLE CAUSE

The officers had ample probable cause to stop Defendant. Probable cause exists when, under the totality of the circumstances, officers have a reasonable belief that a suspect has committed a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It requires only a practical, common sense, "fair probability," not proof beyond a reasonable doubt. See *United States v. Patrick*, 781 F.3d 357, 361 (8th Cir. 2015). These conditions "are not technical, they are the factual and practical considerations of everyday

life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), citing *Brinegar v. United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 1310-11, 93 L. Ed. 1879 (1949). Officers may conduct an investigatory stop when they have "a particularized and objective basis" for suspecting the person stopped of criminal activity or of being a wanted individual. *United States v. Hensley*, 469 U.S. 221, 229 (1985). This standard allows officers to rely on specific and articulable facts known at the time, and it does not require absolute certainty. *United States v. Smith*, 2011 WL 3262164, at *2 (8th Cir. Aug. 5, 2011) (officers may act on an objectively reasonable belief even if the facts later turn out to be imperfect).

Reasonable suspicion exists even when officers reasonably mistake an individual for a target, so long as the description, location, and circumstances support the identification. See *United States v. Lopez-Tubac*, 943 F.3d 1156 (8th Cir. 2019)( Reasonable suspicion exists even when an ICE Officer "reasonably mistakes" a defendant for a suspect designated for removal, if there are matching characteristics and proximity to the suspects residence); See *United States v. Borgman*, 646 F.3d 518, 523 (8th Cir. 2011) (finding a lawful stop when a suspect matched a target description, even if the suspect's physical characteristics differed slightly from the description); *United States v. Phillips*, 679 F.3d 995 (8th Cir. 2012)( investigatory stop is lawful where

defendant closely matched suspect's description and officer observed defendant approaching house in which officer believed suspect was staying); *United States v. Lemons*, 84 F.4th 766 (8th Cir. 2023) (height discrepancy of nine inches did not invalidate, emphasizing that minor inaccuracies in a suspect's description do not invalidate officers' reasonable suspicion).

Here, officers were actively surveilling a target residence when individuals matching the target's description fled upon noticing law enforcement. Shortly thereafter, Defendant was observed at the same location in a vehicle matching the target's description, which departed at high speed. When officers attempted a stop, Defendant refused to yield, ran multiple red lights, and engaged in evasive driving. This conduct, viewed in totality, independently escalated the encounter and supported at least reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *Patrick*, 781 F.3d at 361.

The officers' initial suspicion was further justified by Defendant's proximity to the target location and his apparent match to the target's description. Courts have consistently held that officers may rely on such specific and articulable facts, even where the identification later proves mistaken. See *United States v. Borgman*, 646 F.3d 518, 523 (8th Cir. 2011); *United States v. Phillips*, 679 F.3d 995 (8th Cir. 2012). Minor discrepancies in physical characteristics do not negate reasonable suspicion where the overall

resemblance and surrounding circumstances support the stop. *United States v. Lemons*, 84 F.4th 766 (8th Cir. 2023); *United States v. Lopez Tubac*, 943 F.3d 1156 (8th Cir. 2019). As in *Lopez Tubac*, the officer had reasonable suspicion to stop Defendant because the ICE Officer reasonably believed Defendant had matching characteristics to the target and observed Defendant proximity to the intended targets residence. This was after the officers had already observed other individuals flee from the area after the officers were observed. Like *Philips*, *Lemon*, and *Borgman*, a "perfect match' is not required. Reasonable mistakes, including a difference of 9 inches in height, do not negate probable cause. Thus, reasonable suspicion existed.

Officers are not required to rule out innocent explanations before acting; they may rely on common-sense judgments based on unfolding circumstances. *Brinegar*, 338 U.S. at 175. Nor do minor discrepancies in description negate reasonable suspicion where the totality supports the stop. *Borgman*, 646 F.3d at 523; *Lemons*, 84 F.4th at 766.

Even if Defendant was not the original target, the Fourth Amendment permits officers to act on an objectively reasonable mistake of identity. *Borgman*, 646 F.3d at 523; *Lemons*, 84 F.4th at 766. The Eighth Circuit has repeatedly upheld stops where officers reasonably believed an individual matched a suspect based on location, appearance, and behavior. See *Lopez Tubac*, 943 F.3d at 1156. Here, Defendant's presence at the target residence,

7

his similarity to the target, and his evasive actions provided a sufficient basis for officers to act, even if that belief later proved mistaken.

Accordingly, the officers' observations and the rapidly evolving circumstances, including the flight of individuals from the target residence, Defendant's presence at that location shortly thereafter, his similarity in description to the intended target, his dangerous and evasive driving, and his refusal to comply with lawful commands provided more than sufficient grounds under the Fourth Amendment for a lawful investigatory stop and subsequent investigation.

## B. DEFENDANT'S RESISTANCE, OBSTRUCTTION, AND ASSAULT PROVIDED INDEPENDENT PROBABLE CAUSE FOR ARREST UNDER 18 USC § 111

Defendant's subsequent conduct supplied an independent and sufficient basis for arrest. Even if the court questioned the initial stop, a defendant's resistance to law enforcement constitutes a new, distinct offense that provides independent probable cause for arrest. See United States v. Dawdy, 46 F.3d 1427, 1430–31 (8th Cir. 1995). Congress intended broadly to prohibit harm or threats thereof to certain federal officials as well as interference with their law enforcement activities. *United States v. Street*, 66 F.3d 969, 974–75 (8th Cir. 1995); *See United States v. Feola,* 420 U.S. 671, 678–84, 95 S.Ct. 1255, 1260–

64, 43 L.Ed.2d 541 (1975); *United States v. Walker,* 835 F.2d at 975 (2nd Cir. 1987); See *United States v. Olunloyo*, 10 F.3d 578 (8th Cir. 1993)( statute was intended to facilitate the twin purposes of protecting federal officers and preventing hindrances of federal functions).

18 U.S.C. § 111 prohibits forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal officer engaged in official duties. "Official duties" means simply acting within the scope of what that person is employed to do and not a "personal frolic". See Eighth Circuit Model Crim. Jury Instr. § 6.18.111, at 161–63 (2025); *United States v. Street*, 66 F.3d 969, 978 (8th Cir. 1995). It is not defined by whether the officer is abiding by laws and regulations in effect at the time of the incident. Id. "Forcibly" includes any physical force or conduct that creates a reasonable fear of harm or interferes with the performance of duties; no completed injury is required. *United States v. Herron*, 539 F.3d 881, 886 (8th Cir. 2008); *United States v. Olson*, 646 F.3d 569, 573–74 (8th Cir. 2011); *United States v. Yates*, 304 F.3d 818, 822 (8th Cir. 2002). It is also a violation to assault a federal officer "on account of" or in retaliation for the discharge of official duties. See id.; *United States v. Lopez*, 710 F.2d 1071, 1074 n.3 (5th Cir. 1983). An individual is not justified in using force to resist an arrest, retaliate, or interfere with a law enforcement officer performing lawful duties. See *United States v. Drapeau*, 644 F.3d 646, 653–54 (8th Cir. 2011); *United States v. Schmidt*, 403 F.3d 1009,

1016 (8th Cir. 2005) (citing *United States v. Dawdy*, 46 F.3d 1427, 1430–31) (resistance to an illegal arrest can furnish grounds for a second, legitimate arrest); *United States v. Lopez*, 710 F.2d 1071, 1074 n.3 (5th Cir. 1983).

Here, officers were plainly engaged in official duties when attempting to identify and detain Defendant in connection with a lawful enforcement operation. Defendant responded by refusing repeated lawful commands, actively obstructing officers' attempts to identify him, and physically striking a federal officer in the face with a closed fist. That conduct independently satisfies the "forcibly assault" element of § 111 and far exceeds the statutory threshold for force. *Herron*, 539 F.3d at 886.

Defendant also forcibly resisted arrest by refusing to exit the vehicle and physically impeding officers' efforts to remove him from the car. This constitutes additional violations of § 111. See *Dawdy*, 46 F.3d at 1430–31; *Schmidt*, 403 F.3d 1009, 1016 (8th Cir. 2005). Accordingly, Defendant's escalating conduct, culminating in a physical assault on a federal officer, supplied independent probable cause for arrest, regardless of any prior Fourth Amendment challenge.

## CONCLUSION

Under the totality of the circumstances, officers had reasonable suspicion to initiate the stop, which escalated into probable cause based on Defendant's evasive and dangerous conduct. Any remaining doubt was

independently eliminated when Defendant physically assaulted a federal officer and resisted arrest, establishing probable cause under 18 U.S.C. § 111. Accordingly, Defendant's motion to suppress should be denied in its entirety.

Dated: April 10, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney


*s/William L. Richards*
BY: William L. Richards
Attorney ID No.: 5445002NY
Special Assistant U.S. Attorney
300 South 4th Street, Suite 600
Minneapolis, MN 55415
T: 612.664-5600| C: 202-230-8076
Email: William.Richards@usdoj.gov
